UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRELL LEONARD SMITH,

       Petitioner,

v.                                                    CASE NO. 18-cv-10568
                                                      HONORABLE LINDA V. PARKER
THOMAS O'BELL WINN,

       Respondent.

_____/

## OPINION & ORDER (1) DENYING THE HABEAS CORPUS PETITION (ECF NO. 1); (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY; AND (3) GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Darrell Leonard Smith, a state prisoner in custody of the Michigan Department of Corrections, filed a petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Pet., ECF No. 1.)  The pleading challenges Petitioner's state convictions for the following crimes:  possession with intent to deliver 50 to 449 grams of a mixture containing cocaine, Mich. Comp. Laws § 333.7401(2)(a)(iii); possession of less than 25 grams of a mixture containing cocaine, Mich. Comp. Laws § 333.7403(2)(a)(v); possession of marijuana, Mich. Comp. Laws § 333.7403(2)(d); and two counts of possession of a firearm during the commission of a felony ("felony firearm"), Mich. Comp. Laws § 750.227b.  In his habeas petition, Petitioner alleges as grounds for relief that his trial attorney was

1

ineffective and that the state trial judge was biased against him.  (ECF No. 1.)  For

the reasons that follow, the Court will deny the habeas petition.

## I.  Background

The Michigan Court of Appeals provided the following brief summary of the

facts that led to the charges against Petitioner:

> This case arises from a traffic stop that occurred on September 6, 2010.
> Defendant was the passenger in the car stopped by police, was searched
> by the police after admitting he was armed, and arrested after the police
> discovered cocaine in his pants.  The police then searched the home
> listed on defendant's driver's license, where they discovered more
> cocaine, marijuana, and several more firearms.

*People v. Smith*, No. 327575, 2016 WL 5887800, at *1 (Mich. Ct. App. Oct. 6,

2016).

Petitioner was released on bond before his jury trial in Oakland County

Circuit Court.  He did not testify or present any witnesses at trial.  His defense was

that the prosecutor failed to prove that he possessed the drugs in question, he was

not guilty of the firearm charges because he had legal possession of the guns, and

he did not commit the related felony drug offenses.  (11/3/11 Trial Tr., ECF No. 8-

10 at Pg. ID 589.)  On November 3, 2011, the jury found Petitioner guilty on all

charges.  (*Id*. at Pg. ID 604-05.)

Following the verdict, Petitioner apparently walked out of the courtroom and

failed to appear for his sentencing.  (4/23/15 Sentencing Tr., ECF No. 8-12 at Pg.

ID 617.)  Over three years later, he returned to the courtroom, and the trial court

2

sentenced him to two concurrent terms of two years in prison for the felony-firearm convictions, with 37 days credit, to be followed by concurrent terms of 51 months to 20 years in prison for the possession-with-intent-to-deliver conviction, one to four years for the other cocaine conviction, and 37 days for the marijuana conviction, with 37 days credit.  (*Id.* at Pg. ID 620; ECF No. 8-13 at Pg. ID 646-47.)

Petitioner raised his habeas claims through counsel in an appeal of right. The Michigan Court of Appeals affirmed his convictions in an unpublished, *per curiam* opinion.  *See Smith*, 2016 WL 5887800.  On May 2, 2017, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the questions presented to the court.  *See People v. Smith*, 893 N.W.2d 630 (Mich. 2017).

On February 15, 2018, Petitioner filed his *pro se* habeas corpus petition. (ECF No. 1.)  He alleges that he received ineffective assistance of trial counsel because trial counsel failed to challenge an unconstitutional search and seizure, lacked a sound defense strategy, and engaged in disruptive courtroom behavior in front of the jury.  (*Id.* at Pg. ID 6.)  Because Petitioner did not file a supporting brief, the Court has looked to his state appellate brief for a fuller explanation of these claims.  The State argues in an answer to the petition that Petitioner's claims

lack merit and that the state appellate court's adjudication of the claims was not

unreasonable.  (Answer, ECF No. 7 at Pg. ID 36-37.)

## II.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

requires prisoners who challenge "a matter 'adjudicated on the merits in State

court' to show that the relevant state court 'decision' (1) 'was contrary to, or

involved an unreasonable application of, clearly established Federal law,' or (2)

'was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding.'"  *Wilson v. Sellers*, 138 S. Ct. 1188, 1191

(2018) (quoting 28 U.S.C. § 2254(d)).  The Supreme Court has explained that

> a state court decision is "contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."

*Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S.

362, 405-406 (2000) (alterations added)).

> "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495.  The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id.* at 410, 412, 120 S.Ct. 1495.  The state court's application of clearly established law must be objectively unreasonable. *Id.* at 409, 120 S.Ct. 1495.

4

*Id.* at 75.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt[.]'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal and end citations omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "[o]nly an 'objectively unreasonable' mistake, . . . one 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement,' slips through the needle's eye of § 2254." *Saulsberry v. Lee*, 937 F.3d 644, 648 (6th Cir.) (quoting *Richter*, 562 U.S. at 103), *cert. denied*, 140 S. Ct. 445 (2019).

## III.  Analysis

### A.  Trial Counsel

Petitioner alleges that his trial attorney was ineffective because the attorney failed to challenge an unconstitutional search and seizure, lacked a sound defense strategy, and engaged in disruptive courtroom behavior in front of the jury. (ECF No. 8-13 at Pg. ID 661-65.) The Michigan Court of Appeals disagreed with

Petitioner's arguments and concluded that he was not denied effective assistance of counsel.

### 1. Clearly Established Federal Law

The clearly established federal law on a claim of ineffective assistance of counsel is *Strickland v. Washington,* 466 U.S. 668 (1984). *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). The Supreme Court stated in *Strickland* that "the proper standard for attorney performance is that of reasonably effective assistance." *Id.* at 687. To establish that counsel's assistance was so defective as to require reversal of a conviction, a convicted person must show that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Id*. Unless the convicted individual "makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*.

An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. A defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

6

*Id.* at 687.  The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable."  *Richter*, 562 U.S. at 111-12 (quoting *Strickland*, 466 U.S. at 693).

### 2.  Application

#### a.  Failure to Challenge the Search and Seizure

Petitioner alleges that his trial attorney was ineffective because the attorney failed to challenge an unconstitutional search and seizure.  (ECF No. 8-13 at Pg. ID 662-64.)  Petitioner's first attorney filed a motion to suppress the search and seizure on the basis that the police officer who stopped the car in which Petitioner was a passenger lied at the preliminary examination about (1) it being dark outside at the time and not being able to see the driver's race, and (2) checking the validity of the license plate after  the traffic stop.  (7/6/11 Mot. Hr'g, ECF No. 8-4.)  The attorney apparently withdrew the motion after learning that the police officer had in fact checked the license plate for the car before stopping the car.  (*See* Appellee's Br., ECF No. 8-13 at Pg. ID 687 n.4.)

Petitioner retained another attorney for trial.  He contends that trial counsel should have challenged his detention and the subsequent pat-down because he was

merely a passenger in the car and in no way connected to the improper license
plate that was the basis for the traffic stop.  (ECF No. 8-13 at Pg. ID 662.)  He
points out that he was detained and searched after the driver of the car was placed
in a patrol car and after a determination was made that the car would be
impounded.  (*Id.* at Pg. ID 663.)  He argues that the detention and search violated
his Fourth Amendment right to be free from an unreasonable search and seizure,
and that there was no sound strategy for trial counsel's failure to move to suppress
the evidence related to the traffic stop and the subsequent search of his residence.
(*Id.* at Pg. ID 663-64.)

The Michigan Court of Appeals adjudicated Petitioner's claim on the merits
and rejected it because the traffic stop was justified, the detention and pat-down of
Petitioner were reasonable, and the subsequent search of his residence pursuant to
a warrant also was legal.  *Smith*, 2016 WL 5887800, at *7-9.  The Court of
Appeals concluded that Petitioner's Fourth Amendment rights were not violated
and that Petitioner was not denied effective assistance of counsel because a motion
to suppress would not have succeeded, and counsel was not required to argue
meritless positions.  *Id.* at *8-9.

The Supreme Court stated in *Kimmelman v. Morrison*, 477 U.S. 365 (1986),
that "the failure to file a suppression motion does not constitute *per se* ineffective
assistance of counsel."  *Id*. at 384.   "Where defense counsel's failure to litigate a

8

Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Id*. at 375.

The evidence at Petitioner's trial established that Officer Michael Zang stopped the car in which Petitioner was a passenger because he randomly checked the license plate at a traffic stop and noticed that it did not match the vehicle. *Smith*, 2016 WL 5887800, at *7. He stopped the car after following it for four blocks and then questioned the driver and checked some additional information on a law enforcement network. (11/1/11 Trial Tr., ECF No. 8-8 at Pg. ID 349.) When Officer Michael Gorbe arrived on the scene, Zang informed Gorbe that he intended to arrest the driver and impound the car due to the improper license plate. (*Id.* at Pg. ID 329.) Zang then proceeded to arrest the driver of the car, and Gorbe approached the passenger side of the car. (*Id.* at Pg. ID 330.)

Petitioner was the passenger, and when Gorbe asked Petitioner to step out of the vehicle, Petitioner informed Gorbe that he had a weapon on him, but that he had a concealed weapons permit. (*Id.* at Pg. ID 420.) When Gorbe asked if he could hold onto the gun while they talked, Petitioner indicated that he did not mind if Gorbe took the gun. (*Id.* at Pg. ID 394.) By then, Zang had placed the driver of

9

the car in Zang's patrol car and had returned to the area where Gorbe was talking

with Petitioner.  (*Id.* at Pg. ID 407.)  As Gorbe unloaded the bullets in Petitioner's

gun, Zang asked Petitioner whether he could do a pat-down, and Petitioner

responded, "Yeah, no problem."  (*Id.* at Pg. ID 334.)  During the pat-down, Zang

felt a hard object in Petitioner's pants and asked Petitioner two or three times what

the object was; Petitioner finally answered, "[d]rugs."  (*Id.* at Pg. ID 334-35.)

Zang then handcuffed Petitioner, removed a white plastic bag from Petitioner's

pants, and placed the bag on the hood of his patrol car.  (*Id.* at Pg. ID 335-36.)  He

and Gorbe opened the bag and concluded that it contained cocaine.  (*Id.* at Pg. ID

433.)  A subsequent field test confirmed that the substance in the bag was cocaine.

(*Id.* at Pg. ID 376.)  The Oakland County Narcotics Enforcement Team searched

Petitioner's residence later that night.  (*Id.* at 326-44, 390-97, 405-11.)

The traffic stop was reasonable and did not violate the Fourth Amendment

because the car had an improper license plate and that was a violation of the State's

traffic code.  *See Whren v. United States*, 517 U.S. 806, 810 (1996) ("As a general

matter, the decision to stop an automobile is reasonable where the police have

probable cause to believe that a traffic violation has occurred."); *see also* Mich.

Comp. Laws § 257.255(1) (stating that a person shall not operate a vehicle required

to be registered unless a valid registration plate issued for the vehicle is attached to

the vehicle).

10

The subsequent detention of Petitioner during the duration of the traffic stop was valid because he was a passenger in the car that was stopped. *Arizona v. Johnson*, 555 U.S. 323, 327 (2009). The pat-down search was valid because it occurred after Petitioner consented. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (explaining that "one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent"). The search of Petitioner's residence later that night was valid because the police acquired a search warrant before searching the house, and there is nothing in the record to suggest that the warrant was improperly issued. Indeed, a search made pursuant to a valid warrant does not violate the Fourth Amendment. *See United States v. Herrera*, 636 F. App'x 250, 253-54 (6th Cir. 2016).

In conclusion, the traffic stop was legal, and the detention and search of Petitioner and his residence were valid under the Fourth Amendment. A motion to suppress the fruits of the searches would have been futile, and "failing to make a futile motion is neither unreasonable nor prejudicial." *Jacobs v. Sherman*, 301 F. App'x 463, 470 (6th Cir. 2008) (citing *Strickland*, 466 U.S. at 687). Therefore, trial counsel was not ineffective for failing to file a motion to suppress evidence, and the state appellate court's rejection of Petitioner's claim was neither contrary to, nor an unreasonable application of, Supreme Court precedent. Petitioner has no right to relief based on this claim.

11

## b.  The Trial Strategy and Defense

Petitioner alleges next that his trial attorney lacked a sound defense strategy, did not understand pertinent legal doctrines, and adopted frivolous trial strategies. (ECF No. 8-13 at Pg. ID 664.)  Petitioner contends that counsel's argument about the cocaine charge was legally incorrect and that counsel failed to construct a nontrivial argument about the police officers' testimony, even though the case against him was based largely on the officers' testimony and the outcome of the trial depended on whether the jury viewed their testimony as reliable.  (*Id.* at 664-65.)

The Michigan Court of Appeals rejected Petitioner's claim that defense counsel failed to form a coherent trial strategy.  According to the Court of Appeals, there was no basis for concluding that defense counsel was ineffective for failing to pursue a different defense.  *Smith*, 2016 WL 5887800, at *9.

"Constitutionally effective counsel must develop [a] trial strategy . . . based on what investigation reveals witnesses will actually testify to. . . ."  *Ramonez v. Berghuis*, 490 F.3d 482, 489 (6th Cir. 2007).  Nevertheless, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities."  *Richter*, 562 U.S. at 110.

12

During the cross-examination of one witness, defense tried to show that it is not illegal to possess pure cocaine because the statutory offense is possession, or possession with intent to deliver, *a mixture* containing cocaine.  (11/2/11 Trial Tr., ECF No. 8-9 at Pg. ID 540.)  Petitioner points out that the Michigan Court of Appeals discredited this theory years earlier in a case where the same trial counsel in this case made that argument.  *See People v. Branch*, No. 260024, 2006 WL 1540797, at *2 (Mich. Ct. App. June 6, 2006.)  In Petitioner's case, however, defense counsel admitted during closing arguments that the prosecution proved the substance in question in count one was a mixture of 50 to 450 grams of cocaine and that the mixture is what makes possession of cocaine illegal.  (11/3/11 Trial Tr., ECF No. 8-10 at Pg. ID 572-74.)

Furthermore, defense counsel's closing argument demonstrates that he had multiple strategies for contesting the prosecution's case.  He maintained that:

● the police officers were biased because they had a stake in the case (11/3/11 Trial Tr., ECF No. 8-10 at Pg. ID 570);

● the guns were legal because Petitioner had a permit to possess them (*id*. at Pg. ID 575-77, 580);

● the prosecutor was trying to portray Petitioner as a deadbeat (*id*. at Pg. ID 577);

● there was a (i) lack of documentation proving that the house where guns and drugs were found was Petitioner's house, (ii) lack of fingerprint evidence, and (iii) lack of proof that Petitioner knew about the drugs in the house (*id*. at Pg. ID 578, 581);

13

● Petitioner did not have exclusive possession of the house; in fact, the driver of the car that was stopped had access to the house (*id*. at Pg. ID 578-81);

● the prosecutor was not reliable or credible because she incorrectly represented that drugs were found in Petitioner's bedroom (*id*. at Pg. ID 579);

● a small amount of cocaine found in the house was present in a common area, and the marijuana was not found in Petitioner's bedroom (*id.* at Pg. ID 580);

● the prosecutor failed to show actual or joint possession of the drugs, and she could not prove that Petitioner had exclusive possession of the drugs (*id*. at Pg. ID 581-82);

● the prosecution was unable to prove that Petitioner had cocaine in his pants because the police failed to preserve a videotape of the traffic stop (*id*. at Pg. ID 583-86);

● the police officers were not credible because they could not keep their stories straight, and their testimonies were bogus (*id.* at Pg. ID 586);

● common sense indicated that Petitioner did not consent to the search; there was no tape recording to prove the prosecution's theory that he did consent, the police officers gave conflicting testimony about whether the bag of cocaine was removed from Petitioner's pants, the bag actually was taken out of the car (not from Petitioner), and there was reasonable doubt as to whether Petitioner had the cocaine in his pants (*id*. at 586-87, 589);

● there was no testimony that the police dog alerted to the front seat of the car; the fact that the dog alerted to the car was a basis for concluding that the cocaine found during the traffic stop came from the car, not Petitioner; and there was a lack of corroborating testimony that Petitioner had the cocaine in his pants (*id.* at Pg. ID 588); and

● Petitioner was not guilty of the felony-firearm charges because the prosecution failed to prove possession of the cocaine (*id*. at Pg. ID 589).

These arguments were part of a reasonable trial strategy, given the strength of the evidence against Petitioner, and the fact that defense counsel's strategy did not persuade the jury to acquit Petitioner does not mean that counsel was ineffective. *See Smith v. Cook*, 956 F.3d 377, 393 (6th Cir. 2020) (concluding that, even though defense counsel's approach to the case did not persuade the jury, it was part of a reasonable defense strategy and that the Petitioner was not deprived of effective assistance).  Although the trial court did say at sentencing that "[t]here might have been a different outcome had (Petitioner's) attorney engaged in another strategy," (4/23/15 Sentencing Tr., ECF No. 8-12 at Pg. ID 617), this Court's role, "[a]s a reviewing court, . . .  is not to speculate about . . . the plausibility of alternative litigation strategies." *Mickens v. Taylor*, 535 U.S. 162, 177 (2002) (Kennedy, J., concurring).  Accordingly, Petitioner's claim about trial counsel's alleged lack of a trial strategy fails, and the state appellate court's rejection of the claim was not contrary to, or an unreasonable application of, *Strickland*.

### c.  Counsel's Disruptive Behavior

Petitioner's final claim about his trial attorney is that the attorney engaged in disruptive courtroom behavior in front of the jury.  (*See* ECF No. 8-13 at Pg. ID 665.)  Petitioner asserts that the attorney repeatedly incited antagonism between

himself and the trial court, and that he appeared to do it intentionally.  (*Id.* at 664;

ECF No. 1 at Pg. ID 6.)  Petitioner also alleges that defense counsel's histrionic

behavior forced the trial judge to criticize the attorney in front of the jury and that

the criticism gave the appearance of judicial bias.  (ECF No. 8-13 at Pg. ID 665.)

Petitioner points to defense counsel's own comment about himself, made during

closing arguments—specifically, that he is "a wild and crazy guy." (*Id.* (citing

11/3/11 Trial Tr., ECF No. 8-10 at Pg. ID 569).)  Petitioner concludes that defense

counsel's conduct made it impossible for the jury to sympathize with him.  (*Id.*)

Once again, the Michigan Court of Appeals disagreed with Petitioner.  The

Court of Appeals noted that "defense counsel's behavior during trial was often

disruptive, uncivil, and inappropriate.  It prolonged the trial, caused significant

distraction, and did not seem intended to aid . . . the defense in any manner."

*Smith*, 2016 WL 5887800, at *9.

The Court of Appeals, nevertheless, concluded that, even if defense

counsel's performance fell below an objective standard of reasonableness,

Petitioner had "not demonstrated the requisite prejudice necessary to establish a

claim of ineffective assistance of counsel."  *Id.*  In reaching this conclusion, the

Court of Appeals pointed to the overwhelming evidence of Petitioner's guilt.  The

Court of Appeals then stated, "in light of this overwhelming evidence of

defendant's guilt, there is no reasonable probability that, but for trial counsel's

disruptive behavior during trial, the result of the trial would have been different."
*Id.*

Defense counsel did argue frequently with the trial court, and even raised his voice at times, but it appears that he was simply trying to be a strong advocate for Petitioner in the face of overwhelming evidence against Petitioner. Even if his performance were deemed deficient, there are several reasons why Petitioner has not established the requisite prejudice.

First, defense counsel explained at the beginning of his closing argument that "things get pretty hot" and "emotional" during criminal trials, that it was not "personal[] although it may look that way," and that the jurors "should make certain that [they] remember the instructions and [to] not allow [their decision] to be impacted in any way by the attorneys." (11/3/11 Trial Tr., ECF No. 8-10 at Pg. ID 569-70.) In her rebuttal argument, the prosecutor also asked the jurors not to be affected by the interpersonal communications, the way things went, the tone of the voices, or because they did not like the way the attorneys presented their case. The prosecutor encouraged the jurors to put those things out of their minds and to apply the law to the facts. (*Id*. at Pg. ID 593.)

Second, the trial court instructed the jurors that the attorneys' statements, arguments, and questions were not evidence, and that the jurors should base their decision only on the admissible evidence. (*Id*. at Pg. ID 596-97.) The trial court

17

also explained that it was the court's duty to see that the trial was conducted according to the law and that when the court made a comment or gave an instruction, it was not trying to influence the jury's vote or express a personal opinion about the case.  (*Id*.)  The court then stated that, if the jurors believed the court had an opinion about how to decide the case, they must pay no attention to that opinion, because they were the only judges of the facts.  (*Id.* at Pg. ID 597.) Of course, there exists an "almost invariable assumption of the law that jurors follow their instructions."  *Lang v. Gundy*, 399 F. App'x 969, 975 (6th Cir. 2010) (quoting *Richardson v. Marsh*, 481 U.S. 200, 206 (1987)).

Finally, the evidence against Petitioner, as summarized by the Michigan Court of Appeals, was overwhelming:

> At trial, two police officers testified consistently that during the traffic stop defendant stated that he had a firearm, consented to a pat down search, and that drugs were recovered from his pants.  Further, several police officers testified regarding the search of defendant's home and indicated that adult male clothing was found in the home, with proof of residency establishing that defendant lived in the home in which cocaine, marijuana, and four more firearms were found.

*Smith*, 2016 WL 5887800, at *9.  There is not a reasonable probability that the result of the trial would have been different if trial counsel had been less argumentative or disruptive.  Thus, Petitioner's claim lacks merit, the state appellate court's rejection of this claim was objectively reasonable, and Petitioner has no right to relief based on this claim.

18

### B.  The Trial Judge

In his final ground for relief, Petitioner alleges that the trial court exhibited

bias toward the defense.  (ECF No. 1 at Pg. ID 7.)  As examples of this, Petitioner

contends that the trial judge criticized and made fun of defense counsel, repeatedly

raised her voice when addressing defense counsel in the jury's presence, and gave

the impression that the judge had an opinion about the correct outcome of the case.

(*Id.*)  Petitioner concludes that the content and tone of the judge's remarks created

an appearance of bias against him.  (*Id.*)

The Michigan Court of Appeals thoroughly analyzed Petitioner's claim on

direct review and denied relief because it did not believe that the trial court's

comments and conduct deprived Petitioner of his right to a fair and impartial trial.

The Court of Appeals summarized its ruling as follows:

> [T]his is not a case in which the trial judge exceeded the proper scope
> of judicial questioning, exhibited "'rather more emotion on the part of
> the trial judge than the records seem to warrant,'" or insinuated a
> disbelief in a theory or defense.  Instead, in an attempt to control the
> proceedings, the trial judge rebuked [defense counsel] on numerous
> occasions in front of the jury.  However, the judge's comments were
> made in direct response to [defense counsel's] repeated disruptive and
> uncivil behavior, did not . . . convey any opinion concerning the weight
> or strength of [defense counsel's] theories of defense, and did not give
> the appearance of advocacy in the prosecution's favor.  While the
> interruptions prolonged the trial and were most likely distracting for the
> jury, and although the judge's comments were directed almost
> exclusively at [defense counsel], the judge was forced to intervene in
> the proceedings to control [defense counsel's] behavior, and she
> provided the necessary curative instructions to the jury.  Accordingly,
> it is not reasonably likely that the judge's conduct improperly

19

influenced the jury by creating the appearance of advocacy or partiality against [defense counsel].

*Id*. at *6 (internal citation omitted).

### 1. Clearly Established Federal Law

The Due Process Clause of the Fourteenth Amendment to the United States Constitution "requires a 'fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997) (quoting *Withrow v. Larkin*, 421 U.S. 35, 46 (1975)).  Courts, however, ordinarily "presume that public officials have properly discharged their official duties." *Id*. at 909 (quotation marks and end citations omitted).  Furthermore, a trial judge is not a mere moderator of a jury trial; he or she "is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law." *Quercia v. United States*, 289 U.S. 466, 469 (1933).  "Within limits, the judge may . . . refuse to allow cumulative, repetitive, or irrelevant testimony . . . and may control the scope of examination of witnesses.  If truth and fairness are not to be sacrificed, the judge must exert substantial control over the proceedings." *Geders v. United States*, 425 U.S. 80, 86-87 (1976) (internal citations omitted).

To prevail on a claim of judicial bias, the petitioner must show "bias, or such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the

accused." *Ungar v. Sarafite*, 376 U.S. 575, 588 (1964).  The Court "cannot assume

that judges are so irascible and sensitive that they cannot fairly and impartially deal

with resistance to their authority or with highly charged arguments about the

soundness of their decisions." *Id*. at 584.  In fact, "judicial remarks during the

course of a trial that are critical or disapproving of, or even hostile to, counsel, the

parties, or their cases, ordinarily do not support a bias or partiality challenge"

unless  "they reveal such a high degree of favoritism or antagonism as to make fair

judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994).

> *Not* establishing bias or partiality . . . are expressions of impatience,
> dissatisfaction, annoyance, and even anger, that are within the bounds
> of what imperfect men and women . . . sometimes display.  A judge's
> ordinary efforts at courtroom administration—even a stern and short-
> tempered judge's ordinary efforts at courtroom administration—remain
> immune.

*Id*. at 555-56 (emphasis in original).

## 2. Application of the Law

The record reveals obvious tension and disagreements between the trial

court and defense counsel, but it was partly the result of defense counsel's

contentious behavior.  He objected to the proceedings frequently, he argued with

witnesses, and he was discourteous at times.  He also disagreed with some of the

trial court's evidentiary rulings and then continued to argue his point after the court

made a ruling.  At times, he raised his voice and interrupted the trial judge when

she was talking.

21

The problem was evident as early as the trial court's preliminary instructions to the jury on the second day of trial.  Defense counsel interrupted the trial court as the court was reading the charges.  The court overruled defense counsel's objection to the court's reading of the charges and then told counsel to sit down.  (11/1/11 Trial Tr., ECF No. 8-8 at Pg. ID 306.)

Defense counsel, however, raised the issue again during his opening statement, and when the prosecutor objected, the trial court said:

> Counsel, I'm going to object and I'm going to tell you to change your line of argument here.  I explained that I was reading a heading that had nothing to do with the actual language of the Information that caused me some confusion and I was verifying that I had the correct information. . . .
>
> Now, there is no conspiracy theory here.  There is nothing else going on other than an error on my part in reading the Information.  So I'm going to ask that you move on to a different line of – and remember, please, that this is opening statement wherein you are advising the jury of what you intend, or what you believe the proofs are going to show during the trial.

(*Id*. at Pg. ID 324.)

Subsequently, during defense counsel's cross-examination of Officer Zang, the prosecutor objected to one of defense counsel's questions, and defense counsel complained that the prosecutor was interrupting him.  The trial court suggested that things would go easier if there were no arguments and if defense counsel would let the court speak instead of speaking over the court.  But after the court gave defense counsel permission to proceed with his cross-examination, defense counsel said:

22

"Your Honor, what I'm troubled with, when the prosecutor makes an objection, you don't let me speak.  I want an opportunity to speak when she makes an objection and it sounds like . . . ."  (*Id*. at Pg. ID 363.)  The trial court then excused the jury, and defense counsel said:

> I don't know if you notice it, but you are – your tone of voice is condescending to me.  You've been yelling at me.  And you don't assume that I'm going to do what she's doing in accordance with the rulings.  You're attacking me in front of this jury.  Not one time do you allow me to respond to your objections.  It's like I don't have anything to say.  I asked you may I respond to an objection.  Now, if you don't want me to respond to objections, say so, but your appearance is clearly in her favor and you're not letting me speak and you're attacking me and you're yelling at me.

(*Id*.)

The trial court responded to defense counsel's remarks by setting ground rules for any future objections.  The court stated that both defense counsel and the prosecutor would be required to state the basis for their objections, provide authority for the objections, and ask to have the jury excused if it appeared that something should not be argued in the jury's presence.  (*Id*. at Pg. ID 364.)  The court also stated that it was inappropriate to interrupt or speak over the court when the court was speaking and that none of them should speak over each other.  (*Id*.)

Defense counsel, nevertheless, maintained that the prosecutor had objected without providing any authority and that the trial court had supplied authority for the objections.  (*Id*.)  The court then admitted that it had been assuming the basis

23

for an objection when the basis was obvious, but the court agreed to discontinue doing that and, instead, to require each party to state the basis for his or her objection.  (*Id.*)  The court also stated that it was inappropriate to continue arguing with the court after the court made rulings, because that gave the impression that there was a lot of discord.  (*Id*.)  When defense counsel agreed that it did look like there was discord, the trial court stated that it did not care about the outcome of the case, but that defense counsel was making it difficult for the court to do its job and to rule on the law in the case.  (*Id*. at Pg. ID 364-65.)

On the following day, a dispute arose over the way defense counsel was questioning a witness.   The trial court excused the jury and the following conversation took place between the trial court and defense counsel:

> THE COURT:  Counsel . . . you are not acting appropriately in my courtroom, and I'm going to ask you to stop baiting arguments, to stop acting histrionically, and to let this trial proceed.  You have got to stop and get control of your behavior.  You know what?  You can ask questions, you can get answers.   What I don't want you doing is screaming at me or screaming at the jury, and I'm just telling you right now, you continue to do it, and I'm going to hold you in contempt.  I'm done.  I've been doing this for two days now trying to hold my tongue.  I'm done.  The next you go off on me or a witness, I'm finding you in contempt.
>
> [DEFENSE COUNSEL]:  Can I make a record?
>
> THE COURT:  Please bring – no.
>
> [DEFENSE COUNSEL]:  I'm not allowed to make a record and respond to what you just said, Your Honor?

THE COURT:  No, you are not.

[DEFENSE COUNSEL]:  Okay.

THE COURT:  And I'm telling you the next time you go off on me or a witness, I am finding you in contempt.

[DEFENSE COUNSEL]:  May I ask you a question?  Are you screaming at me?

THE COURT:  Yep, I am.

[DEFENSE COUNSEL]:  Thank you.  Nothing else.  I got nothing else to say.  I'm finished.  That's all I wanted to hear.  I'm ready to go.

(11/2/11 Trial Tr., ECF No. 8-9 at Pg. ID 503-04.)

Later that same day, the prosecutor objected when defense counsel asked a witness whether it was the mixture in which cocaine is found that made cocaine illegal.  (*Id.* at Pg. ID 539-40.)  The trial court then asked defense counsel whether he was asking the witness for a legal conclusion.  (*Id.* at Pg. ID 540.)  Instead of answering, "Yes," or "No," defense counsel insisted that the witness was qualified to make a conclusion, and when the trial court asked defense counsel to respond to the prosecutor's question, defense counsel asked to have the jury excused.  (*Id.*)  In the jury's absence, defense counsel addressed the trial court as follows:

[DEFENSE COUNSEL]:  You are screaming at me.  You are frowning.  You are at the top of your voice, you are yelling at me, Your Honor.  I understand you might be frustrated, but I believe that those civility principles apply to you as well.  And I'm sorry, I apologize to the Court, but I will not be yelled at again.  I've told my client this.  I

25

don't have to take that.  You don't have to yell at me.  I won't tolerate it.  It's inappropriate.

For my legal objection, you sit up here and let this prosecutor allow that witness to get up here and tell this jury that that's definitely possession with intent to deliver, give them the opinion, let them think that they qualified for him to sit up here and tell them possession with intent to deliver, I go back to asking the same question, and you overrule me.  I don't have a problem with your objection, but your yelling and screaming at me cannot be tolerated, and therefore – and you've already admitted that you're yelling and screaming, and therefore since the Court will continue to do that, I am fearful that you may hold me in contempt.  I don't think you have a right to yell and scream, and therefore, I've advised my client I can no longer fulfill my Sixth Amendment responsibility, because I don't plan on going to jail.  For the remaining of this trial, I will have nothing else to say to you.  I cannot be intimidated.  I apologize for whatever conduct I have; I've got nothing else to say.

(*Id*. at Pg. ID 540-41.)  The discussion continued as follows:

THE COURT:  Counsel, nor can I be intimidated.  I had – I was forced to raise my voice to get your attention, because you continue to talk over me, you continue to act in a manner that has nothing to do with justice and the search for truth, and to get this case resolved.  You – I've told you that when you have an objection, you need to state your legal reasoning for it, when I asked you for your legal reasoning for it, you continued to talk over the top of me.  I raised my voice once.  Thank goodness we have a video/audio record of this.  And you can do whatever you want with that video/audio record.  And if you choose at this point to stop representing your client, then you will also face the consequences of that.  I think I've made it very clear that we will proceed in an orderly manner, and that that will include you stating your objections and your basis for your objections, and not yelling at the Court or talking over the Court.

So, at this point, we have our record and we will proceed with this trial, and you can choose to behave as you choose to behave.

. . . .

26

[DEFENSE COUNSEL]:  Can I make myself clear to the Court?

THE COURT:  About what?

[DEFENSE COUNSEL]:  Did you understand what I just said?

THE COURT:  I don't – you've made your record.

[DEFENSE COUNSEL]: Okay.

THE COURT:   What I'm telling you is[,] nor will I be intimidated by a person who insists on behaving in the manner in which you're behaving, and if you're choosing to act in any behavior or not represent your client . . . in any way, that is your choice.

[DEFENSE COUNSEL]:  Okay.

THE COURT:  And this case will continue, and we will go until it's done.

[DEFENSE COUNSEL]:  Go right ahead, Judge.

(*Id*. at Pg. ID 541.)

Notably, the court instructed the jurors at the beginning of the trial that nothing it said was meant to reflect its opinion about the facts of the case.  (11/1/11 Trial Tr., ECF No. 8-8 at Pg. ID 305.)  In the court's final charge to the jurors, the court stated:

[W]hen I make a comment or give an instruction, I am not trying to influence your vote or express a personal opinion about the case.  If you believe that I have an opinion about how you should decide this case, you must pay no attention to that opinion.  You are the only judges of the facts, and you must decide this case from the evidence.

(11/3/11 Trial Tr., ECF No. 8-10 at Pg. ID 597.)

Although the court did tend to rule in the prosecution's favor when objections were made, the court also granted defense counsel some courtesies, as the Michigan Court of Appeals pointed out, by

> giving [defense counsel] leeway when he misplaced his file and wanted another copy of documents provided to him during discovery, halting the proceedings to call the gun board twice in order to satisfy [defense counsel's] objection to the evidence regarding defendant's suspended concealed pistol license, and giving [defense counsel] 20 minutes to review materials.

*Smith*, 2016 WL 5887800, at *3. The trial court also ruled in defense counsel's favor on a disputed issue about the verdict form. (11/2/11 Trial Tr., ECF No. 8-9 at Pg. ID 549-51.)

Indeed, there was obvious discord between the trial court and defense counsel, but the court's remarks appear to have been aimed at controlling the proceedings so that the trial could proceed in an orderly manner and the court could rule on legal questions. Indeed, such control was necessary when, as defense counsel stated during closing argument, an attorney believes that because he has "a license in [his] pocket," he is "allow[ed] to do something the [the jury] can't do; argue with the judge." (11/3/11 Trial Tr., ECF No. 8-10 at Pg. ID 569.)

In *U.S. v. Daniels*—another case concerning a claim of judicial bias based on the interactions between a court and trial counsel in this case, Barnett—the Sixth Circuit noted that the district court "frequently belittled [Barnett] in front of the jury" by "threatening sanctions," "accusing him of 'flim flam' and '[over the

28

top] mendacity,'" and "ordering him to 'shut up.'"  616 F. App'x 782, 784 (6th Cir. 2015).  The Sixth Circuit further noted that the district court made "numerous *sua sponte*" statements regarding the irrelevancy of Barnett's lines of questioning. *Id.* at 784-85.  The Sixth Circuit concluded that these statements "created an appearance of bias that undermine[d] the verdict," vacated the convictions entered by the district court, and remanded the case for a retrial.  *Id.* at 785-86.  This case, however, is not *Daniels*.  Here, Petitioner does not contend that the trial judge threatened Barnett with contempt or sanctions in front of the jury, accused him of nonsensical talk or untruthfulness in front of the jury, or told him to "shut up"— much less in front of the jury.  Nor does Petitioner point to any *sua sponte* comment that the trial court made regarding relevancy.

Instead, this case is more like *United States v. Jones*, which distinguished *Daniels* when explaining why the district court's comments did not deny the petitioner his right to a fair trial.  747 F. App'x 348 (6th Cir. 2018).  When describing the conduct of the district court, the *Jones* court stated:

> Unlike cases where we have found judicial misconduct, *see, e.g., United States v. Hickman*, 592 F.2d 931 (6th Cir. 1979) and *United States v. Daniels*, 616 F. App'x 782 (6th Cir. 2015), the district court did not take an anti-defendant tone, threaten defense counsel with sanctions, re-direct witnesses on behalf of the prosecution, accuse defense counsel of "flim-flam," or cut off defense counsel's closing argument.  Instead, the district court's expressions of frustration and its interjections were imperfect attempts to run the trial in a focused and efficient manner . . . .

29

*Id.* at 353-54 (stating that the district court "reasonably sought to avoid a dramatic sideshow" and "ensure the orderly presentation of evidence and testimony" even when "express[ions] [of] frustration . . . . could have been more restrained" when doing so).  After noting the two comments that came closest to judicial misconduct (one that appeared to assess witness credibility and the other the probative value of evidence), the Sixth Circuit highlighted the judge's "extensive curative instructions" and found that "[t]hese instructions helped reduce the problematic aspects of the court's earlier comments."  *Id.* at 354.  ("In assessing whether the district court's conduct fell so demonstrably outside the acceptable range of judicial behavior such that it amounted to hostility or bias, it is appropriate to consider whether the district court gave curative instructions at the close of the proceedings.").  The *Jones* court ultimately concluded:

> [W]hile the district court's conduct fell short of model judicial behavior, a review of the entire record indicates that Jones received a fair trial, and the district court's conduct was not an abuse of discretion.  Most of the comments, read in context, amounted to inartful attempts by the district court to promote trial efficiency and to ensure that defense counsel focused on relevant issues.  Accordingly, the district court's conduct did not fall so demonstrably outside the acceptable range of judicial behavior such that it amounted to hostility or bias toward Jones.

*Id.* at 352.

Here, Petitioner has failed to show that the trial court was biased against him or that there was such a likelihood of bias or the appearance of bias that the court

was unable to balance his interests against the court's interests. Petitioner also has failed to show that the court had an interest in the outcome of his case. The trial court's impatience, annoyance, and anger did not rise to the level of judicial bias because the court did not "convey any opinion concerning the weight or strength of [defense counsel's] theories of defense, and did not give the appearance of advocacy in the prosecution's favor." *Smith*, 2016 WL 5887800, at *6. As in *Jones*, a review of the entire record demonstrates that the trial court simply "sought to avoid a dramatic sideshow" and "ensure the orderly presentation of evidence and testimony." And her curative instructions helped curb the concerns Petitioner now flags. Indeed, the state appellate court's conclusion that the trial court did not deprive Petitioner of a fair and impartial trial was not contrary to, or an unreasonable application of, Supreme Court precedent, and Petitioner has no right to relief on his claim.

### IV. Conclusion

The state appellate court's adjudication of Petitioner's claims on the merits was not so lacking in justification that there was an error beyond any possibility for fairminded disagreement.

Accordingly,

**IT IS ORDERED** that the Petition for a Writ of Habeas Corpus (ECF No. 1) is **DENIED**.

31

**IT IS FURTHER ORDERED** that the Court **DECLINES** to issue a certificate of appealability because reasonable jurists could not disagree with the Court's resolution of his constitutional claims, nor conclude that the issues deserve encouragement to proceed further.  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

**IT IS FURTHER ORDERED** that Petitioner may proceed *in forma pauperis* on appeal if he appeals this decision because an appeal could be taken in good faith.  28 U.S.C. § 1915(a)(3).

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: March 29, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, March 29, 2021, by electronic and/or U.S. First Class mail.

s/ R. Loury
Case Manager

32